**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NORGUARD INSURANCE COMPANY,

      Plaintiff,

  v.

MB REAL ESTATE SERVICES, INC.,
MARTIN KRASLEN, NATIONAL
WRECKING COMPANY, and NORMAN
MECHANICAL INC.,

      Defendants.

          Case No. 22 cv 3007

          Honorable Sunil R. Harjani

MB REAL ESTATE SERVICES, INC.,

      Defendant/Third-Party Plaintiff,

  v.

THE CONTINENTAL INSURANCE CO.,

      Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER

Martin Kraslen filed an Illinois state court case seeking damages and compensation for injuries resulting from an accident when he was working for MBRE. When Kraslen discovered that video footage of his fall was not preserved, he amended his complaint to include a spoliation claim against MBRE. At the time of the amendment, NorGUARD was already defending MBRE in the case without a reservation of rights. After NorGUARD became aware of the new claim, NorGUARD advised MBRE that there was no coverage under their policy for the spoliation claim, but that it would continue to defend MBRE under a reservation of rights. MBRE then sought coverage from Continental, who disclaimed coverage. Kraslen later voluntarily dismissed his suit

and refiled a single-count complaint against MBRE for spoliation. MBRE again sought coverage from both NorGUARD and Continental for this second lawsuit and they both denied coverage. This declaratory judgment action was brought to resolve whether NorGUARD and Continental owe a duty to defend MBRE against Kraslen's spoliation claim. All parties now move for summary judgment. For the reasons stated below, the following motions are denied in their entirety: Plaintiff NorGUARD's Motion for Summary Judgment on the Duty to Defend, Doc. [74], Defendant MBRE's Motion for Summary Judgment against NorGUARD, Doc. [77], and Plaintiff NorGUARD's Motion for Summary Judgment on estoppel, Doc. [82]. Defendant MBRE's Motion to Strike is granted, Doc. [89], Defendant Continental's Motion for Summary Judgment is granted, Doc. [76], and Plaintiff MBRE's Motion for Summary Judgment against Continental is denied, Doc. [78].

## Background

This declaratory judgment litigation concerns an insured's duty to defend a personal injury suit filed in state court, *Martin Kraslen v. W.E. O'Neil Construction Company, et al*, Case No. 18 L 4183 ("*Kraslen I*"). Initially, Martin Kraslen sought damages and compensation for injuries resulting from an accident on May 13, 2016, when Kraslen was working as the Chief Operating Engineer for MBRE at a property located at 85 East Upper Wacker Drive, Chicago Illinois. Doc. [73] ¶¶ 7, 40. In that case, Kraslen alleged that he was entering the inside walkway directly outside his office doorway and fell through the sewage ejector basin pit access cover into the excavated pit area beneath. *Id.* ¶ 42. On May 16, 2016, MBRE provided notice of Kraslen's accident to NorGUARD under its workers' compensation and employer's liability policy. *Id.* ¶ 44. After the accident, Kraslen filed a workers' compensation claim against MBRE and obtained workers' compensation benefits under the NorGUARD Policy issued to MBRE. *Id.* ¶ 45. In April 2018,

Kraslen filed *Kraslen I* against multiple defendants allegedly responsible for the injury, one of which brought in MBRE through a Third-Party Complaint for Contribution on April 5, 2019. *Id.* ¶¶ 46-47. NorGUARD provided coverage to MBRE in connection with the Third-Party Complaint for Contribution in *Kraslen I* without reserving any of its rights. *Id.* ¶ 49. NorGUARD appointed Sanchez & Daniels as MBRE's defense counsel in *Kraslen I*. *Id.* ¶ 50.

On September 14, 2021, Kraslen filed an Eleventh Amended Complaint in *Kraslen I*, asserting, for the first time, a count for spoliation against MBRE. *Id.* ¶ 59. In his spoliation count, Kraslen alleged that MBRE received video footage of his fall and knew that it was material evidence to his personal injury case but failed to preserve the video. Doc. [73-1] Ex. K. Sanchez & Daniels did not notify NorGUARD that the Eleventh Amended Complaint had been filed against MBRE. Doc. [73] ¶ 64. NorGUARD first learned that Kraslen filed a spoliation claim against MBRE upon its receipt of a copy of Kraslen's Eleventh Amended Complaint from subrogation counsel in a related matter involving Kraslen on January 31, 2022. *Id.* ¶ 65.

On February 22, 2022, NorGUARD sent a letter to MBRE regarding its coverage of the spoliation claim in *Kraslen I*. NorGUARD advised MBRE that there was no coverage under the NorGUARD Policy for the spoliation claim asserted by Kraslen. *Id.* ¶ 68. In this letter, NorGUARD also advised MBRE that notwithstanding its coverage position, NorGUARD agreed to defend MBRE in connection with the spoliation claim, subject to a complete reservation of its rights under the NorGUARD Policy. *Id.* ¶ 69. Prior to February 22, 2022, NorGUARD had not reserved any of its rights regarding the coverage it provided to MBRE for *Kraslen I*. *Id.* ¶ 73. Also, in its letter, NorGUARD did not notify MBRE of any potential conflict of interest in having NorGUARD's appointed panel counsel remain as MBRE's defense counsel or of its right to obtain an independent defense for Kraslen's spoliation claim against MBRE. *Id.* ¶¶ 71-72.

During the timeframe between Kraslen filing the amended complaint and NorGUARD sending its reservation of rights letter, Sanchez & Daniels continued to represent MBRE in *Kraslen I*. In January 2022, Sanchez & Daniels represented MBRE during a mediation. *Id.* ¶ 61. That same month, on January 13, 2022, Sanchez & Daniels filed a motion for summary judgment for MBRE in *Kraslen I* on multiple issues including Kraslen's spoliation claim against MBRE. *Id.* ¶ 62. Sanchez & Daniels also did not oppose a Motion For Good Faith Finding filed by settling defendant Oxford Hotels and Resorts, LLC on November 2, 2021, during *Kraslen I. Id.* ¶ 74.

This declaratory action was originally brought by NorGUARD on June 8, 2022, against MBRE and Martin Kraslen for declaratory judgment concerning its rights and obligations. *Id.* ¶ 7. On September 26, 2022, MBRE filed a Third-Party Complaint for Declaratory Judgment against Continental. *Id.* ¶ 11.

After the state court denied MBRE's motion for summary judgment on the spoliation claim in *Kraslen I* and the case was set for trial, NorGUARD removed Sanchez & Daniels as MBRE's appointed defense counsel and appointed trial counsel Robert Hogan of Nyhan, Bambrick, Kinzie, & Lowery to represent MBRE. *Id.* ¶ 76. On October 16, 2022, Kraslen voluntarily dismissed *Kraslen I. Id.* ¶ 81. At the time of his voluntary dismissal, NorGUARD's appointed defense counsel for MBRE did not request that the voluntary dismissal order bar Kraslen from re-opening discovery upon re-filing his spoliation claim against MBRE. *Id.* ¶ 82. On February 14, 2023, Kraslen refiled his spoliation claim against MBRE in *Kraslen II*, which asserted a single count for "Negligent Spoliation – Video Surveillance." *Id.* ¶ 83. At this point, MBRE requested coverage from NorGUARD for *Kraslen II. Id.* ¶ 84. NorGUARD did not create a new claim number for *Kraslen II* and it was assigned to the same insurance adjuster. *Id.* ¶¶ 85-86. NorGUARD

disclaimed coverage for *Kraslen II*. *Id.* ¶ 15. Continental disclaimed coverage for MBRE for *Kraslen I* and *Kraslen II*. *Id.* ¶ 16.

After the filing of *Kraslen II*, NorGUARD filed a First Amended Complaint for Declaratory Judgment against MBRE and Kraslen on May 19, 2023 before this Court. *Id.* ¶ 17. MBRE filed an Amended Third-Party Complaint for Declaratory Judgment against Continental on July 11, 2023. *Id.* ¶ 18. On August 1, 2023, Continental filed its Answer and Affirmative Defenses to MBRE's Amended Third-Party Complaint. *Id.* ¶ 19. All parties now move for summary judgment.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. The standards for summary judgment remain the same when addressing cross-motions for summary judgment: the court must "construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues of material fact." *R.J. Corman Derailment Servs., LLC. v. Int'l Union of Operating Eng'rs, Local Union 150, ALF-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). Finally, a federal court

sitting in diversity over an insurance coverage dispute "must attempt to resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013) (internal citation omitted). The parties agree that Illinois law governs this dispute.

## Discussion

With these principles in mind, the Court turns to the plethora of summary judgment motions filed by the parties. NorGUARD moved for summary judgment on the basis that it had no duty to defend under the policy. Doc. [74]. MBRE moved for summary judgment on the basis that NorGUARD should be estopped from raising its coverage defenses. Doc. [77]. In response, NorGUARD filed a second motion for summary judgment on the basis that it should not be estopped. Doc. [82]. MBRE filed a motion to strike the affidavit NorGUARD attached in support of its second summary judgment motion and response in opposition to MBRE's motion for summary judgment. Doc. [89]. In the third-party litigation, Continental moved for summary judgment on the basis that it does not owe a duty to defend or indemnify. Doc. [76]. Finally, MBRE moved for summary judgment on the basis the Continental owed a duty to defend and should be estopped from raising coverage defenses. Doc. [78]. As many of the arguments in support of summary judgment overlap among the parties, the Court will discuss each of the relevant issues in turn.

### I. NorGUARD v. MBRE

NorGUARD's initial summary judgment motion argues that Kraslen's spoliation claim is not covered under its insurance policy, so it owed MBRE no duty to defend. MBRE moved for summary judgment on the basis that: (1) NorGUARD should be estopped from raising coverage defenses, and (2) NorGUARD failed to notify MBRE of a potential conflict of interest and its right

to independent counsel.  NorGUARD responded by filing a second motion for summary judgment on the issue of estoppel.  As part of this second motion, NorGUARD filed a statement of additional facts supported, in part, by an affidavit of Mark Patricoski, Kraslen's attorney in the underlying matter, which MBRE has moved to strike.

### a. Duty to Defend

The first question the Court must answer in an insurance coverage dispute is whether the insurer, NorGUARD, had a duty to defend the insured, MBRE, based on the terms of the insurance policy.  "In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established." *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 28 (Ill. 1976).

NorGUARD argues that the spoliation claim is not covered by their insurance policy and thus they do not have a duty to defend.  The negligent spoliation claim at issue alleges that as part of its investigation, MBRE "received, were permitted access to, retained, possessed, a download link to the video footage of Plaintiff's fall and injury[.]" Doc. [73-1] Ex. A ¶ 9.  The claim further alleges that MBRE "failed to preserve the video footage" and "allowed it to become lost, destroyed, expired, inaccessible, and spoliated." *Id.* at Ex. A ¶ 17.  In contrast, NorGUARD's insurance policy provides for workers' compensation insurance and employer's liability coverage subject to certain limitations, exclusions, provisions, and conditions. Doc. [73] ¶ 22.  A spoliation claim quite clearly does not fall under a workers' compensation insurance policy.  NorGUARD's policy further stated that it had "no duty to defend a claim, proceeding or suit that is not covered by this insurance." Doc. [73] ¶ 26.  Thus, under the terms of the insurance policy, NorGUARD had

no duty to defend. MBRE makes no effort to argue the issue, but instead focuses on why NorGUARD should be estopped from raising this defense.

### b. Waiver and Estoppel

Waiver and estoppel are two different concepts, but the parties unfortunately intertwine the discussion of these defenses. In fact, there are two forms of estoppel, contractual and equitable, which are both separate and distinct from the concept of waiver. Contractual estoppel, sometimes referred to as general estoppel, "precludes an insurer from relying on policy defenses if the insurer has either failed to defend the insured or seek a declaratory judgment." *Westfield Ins. Co. v. Maxim Constr. Corp., Inc.*, 2019 WL 13491205, at *1 (N.D. Ill. Mar. 30, 2019). However, the general rule for contractual estoppel is that it "cannot be used to create primary liability or to increase coverage provided under an insurance policy." *Essex Ins. Co. v. Structural Shop, Ltd.*, 2018 WL 1411071, at *5 (N.D. Ill. Mar. 21, 2018), *aff'd sub nom. Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007 (7th Cir. 2019) (quoting *Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996)). In contrast, equitable estoppel applies "when an insurer undertakes the defense of an insured and later attempts to withdraw that defense, to the detriment of the insured." *Illinois Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 720 (7th Cir. 2006). This relies on the conduct of the insurer, rather than the content of the contract. If an insurer undertakes an action without reserving its rights to contest the coverage, resulting in prejudice to the insured, it may be estopped from denying coverage. *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1182 (7th Cir. 1994). But prejudice will not be conclusively presumed by an insurer's mere entry of appearance and assumption of the defense. *Peppers*, 355 N.E.2d at 29. The insured has the burden of establishing prejudice by "clear, concise, and unequivocal evidence." *W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 879 (Ill. 1985).

8

Lastly, waiver arises from an affirmative act of the insurer that is "consensual and consists of the intentional relinquishment of a known right." *Id.* at 878.  Waiver may be express or implied and can be established if the insurer had "constructive knowledge" of the relevant facts, even if it lacks actual knowledge. *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1100 (Ill. App. Ct. 2008).  Unlike equitable estoppel, waiver does not require prejudicial reliance by the insured. *Brochu*, 475 N.E.2d at 878.

### i.  Contractual Estoppel

If the policy and the complaint are compared and there is clearly no potential for coverage, then contractual estoppel does not apply. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019).  Here, MBRE makes no argument that contractual estoppel should apply and as discussed above, there is clearly no coverage for the spoliation claim alleged in the complaint, thus contractual estoppel does not apply.

### ii.  Equitable Estoppel

Unlike contractual estoppel, equitable estoppel can force an insurer to pay for a claim that falls outside of the terms of its policy. *Blue Moon*, 927 F.3d 1007, 1012–13 (7th Cir. 2019).  The general rule for equitable estoppel is that an "insurer may be estopped from asserting a defense of noncoverage if it undertakes the defense of an action and that undertaking results in some prejudice to the insured." *Brochu*, 475 N.E.2d at 879.  Merely filing an appearance and assuming the defense is insufficient to establish prejudice. *Peppers*, 355 N.E.2d at 29.  "If, however, by the insurer's assumption of the defense the insured has been inducted to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage." *Id.*  Whether the insured has been prejudiced is a question of fact that will not be presumed. *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1182 (7th Cir. 1994).  "The burden

of establishing that fact rests with the insured and must be proved by clear, concise, and unequivocal evidence." *Brochu*, 475 N.E.2d at 879.

"Unlike waiver, estoppel does not focus on the conduct or intent of the insurer, but on the effect of the insurer's conduct on the insured." *Bituminous Cas. Corp. v. Fulkerson*, 571 N.E.2d 256, 265 (1991). When Illinois law asks whether the insurer acted in a way that prejudiced the insured, the inquiry is focused on whether the insurer, as part of defending the insured, took control of the litigation defense away from the insured. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1013 (7th Cir. 2019). "The question, Illinois law makes plain, is one of control, not whether the insured could have obtained a more favorable outcome for itself." *Id.* "[W]here the insurer's subsequent conduct in undertaking and carrying out the defense of the underlying action essentially subverts the insured's ability to protect its own interests, the insurer will indeed be estopped from asserting policy defenses against the insured." *Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F. Supp. 2d 901, 906 (N.D. Ill. 2000).

The question of whether there was prejudice to the insured, here MBRE, is a question of fact. As made clear in the cross-summary judgment briefs, the parties have sharply contrasting views of the facts in this case and the implications certain events have on the outcome of this litigation. Before addressing the issues in this case, it is helpful to recount how courts have addressed the question of prejudice in other insurance declaratory judgment actions.

In some cases, the evidence was clear that there was no prejudice to the insured. For example, in the seminal case *Maryland Casualty Co. v. Peppers*, the Illinois Supreme Court found no prejudice when the insurer's attorney withdrew after only representing the insured for 24 days. 355 N.E.2d 24, 29 (Ill. 1976). The Illinois Supreme Court also found it important that the insured's own attorney made an appearance in the case before the insurer's counsel, and there was no

indication on the record that the insured was not represented by its own counsel or that it was induced to surrender control of his own defense. *Id.* Similarly in *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, the Seventh Circuit found it crucial to the question of control that the insured had its own counsel who was dictating the litigation strategy even after the insurer became aware of the claim. 927 F.3d 1007, 1013 (7th Cir. 2019). There was no evidence in the record that the insurer did anything more than passively monitor the insured's defense that was led by the insured's own defense counsel. *Id.*

In other cases, courts have granted summary judgment to an insured because it was clear that they were prejudiced by the insurer's conduct. In *Home Ins. Co. v. Three I Truck Line, Inc.*, the insured notified its excess insurance carrier on October 12, 1998, of a claim, shortly before its trial was scheduled to begin. 95 F. Supp. 2d 901, 903 (N.D. Ill. 2000). Ten days later, on October 22, 1998, the insurer sent a letter notifying the insured that it had no duty to defend but that it had a right to participate in the defense and reserved all of its rights; however, the insurer also told the insured's pre-existing counsel who had been managing the defense that their services were no longer needed and that its fees would not be paid to even attend the trial. Then, on October 26 and 27, the insurer's appointed counsel did not file any of the motions in limine that had been prepared by the insured's counsel on plaintiffs' damages evidence and did not object to any of the plaintiffs' motions in limine. At trial, the insurer's counsel made no arguments during its opening statement contesting the amount of plaintiffs' damages and did not cross-examine the plaintiffs' two expert witnesses as to damages. During its case in chief, the insurer's counsel did not call its own damages expert or any of the three experts engaged by the insured's prior counsel. The insurer's counsel also did not contest the amount of plaintiffs' damages in its closing. While this trial was ongoing, the insurer had a different outside counsel separately prepare a declaratory judgment

action on the issue of late notice of the claims, which was filed after closing arguments but before the jury returned a verdict against the insured. The court found that regardless of whether the insurer explicitly said that it was exercising its rights to take over the defense, its actions showed that it did take over the defense, and that it drastically changed the trial strategy prepared by the insured's prior independent counsel. *Id.* at 907. So, despite it being undisputed that the claims were not covered by the insurer's policy, its assumption and retention of control was sufficient for the insurer to be estopped from asserting its late notice defense.

However, there is a third possible outcome – where genuine issues of fact prevent the court from determining whether there was prejudice. For example, in *W. Cas. & Sur. Co. v. Brochu*, the Illinois Supreme Court, after finding that the insurer did not waive its rights to raise a policy defense, found that genuine issues of fact prevented summary judgment on the issue of estoppel. 475 N.E.2d 872, 879 (Ill. 1985). The court determined that the record failed to show how the insured was prejudiced by the approximately one-year delay by the insurer in asserting a noncoverage defense and that it should be given an opportunity to do so. *W. Cas. & Sur. Co. v. Brochu*, 460 N.E.2d 832, 839 (Ill. App. Ct. 1984), *aff'd*, 475 N.E.2d 872 (Ill. 1985). Similarly, in *Nat'l Fire & Marine Ins. Co. v. Glencrest Healthcare & Rehab. Ctr., Ltd.*, the parties disputed how much control the insurer's appointed counsel had when the insured's counsel also participated in the trial and whether the insurer's conduct prevented the insured from its preferred course of conduct, settling, or from appealing. 2024 WL 4444409, at *15 (N.D. Ill. Oct. 8, 2024). The court found that when viewing the facts in the light most favorable to non-movant insurer, there were disputes of material facts that prevented summary judgment about how the insurer's conduct impacted the insured's ability to settle. *Id.* In such cases, courts should have a trial to determine

the disputed facts regarding prejudice and estoppel. *See Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 451 (7th Cir. 2000).

Similar to the latter group of cases, the undisputed facts here do not clearly indicate whether MBRE was prejudiced. There are certainly some undisputed and relevant facts: Kraslen filed the Eleventh Amendment Complaint on September 21, 2021, in *Kraslen I*; NorGUARD's appointed counsel did not oppose Oxford's Motion for Good Faith Finding of Settlement in November 2021, between Oxford and Kraslen; in January of 2022, NorGUARD's appointed counsel represented MBRE in a mediation for *Kraslen I*; on January 13, 2022, NorGUARD's appointed counsel filed a motion for summary judgment in *Kraslen I* on multiple issues including the spoliation claim; NorGUARD first learned of the spoliation claim on January 31, 2022, and; NorGUARD sent its reservation of rights letter for the spoliation claim in *Kraslen I* on February 22, 2022. These facts largely involve the dates of court filings and do not directly address the issues of how MBRE was prejudiced and what control was exercised by the insurer's counsel.

As an initial matter, the timeline of this case does not fit neatly within the case law. Courts often deal with either the first portion of a case right after the insurer's attorney files an appearance or an insurer's conduct in the immediate leadup to or during trial. Here, the underlying case was between these two extremes, as the case was proceeding through mediation and summary judgment filings during the gap between when the Eleventh Amended Complaint was filed and when NorGUARD finally reserved its rights. This case also falls in between the precedent in terms of total number of impacted days. Clearly, the approximately five months is more prejudicial than the 24 days in *Peppers* and was a substantial period of time for the insurer's attorney to control the litigation; but it does not reach the extent of the 2-year delay by the insurer in *Nat'l Ben Franklin Ins. Co. v. Davidovitch*, who controlled the insured's defense before he obtained his own counsel.

462 N.E.2d 696, 700 (1984). Beyond that, courts have repeatedly noted that it is not merely the length of time, but rather what occurred during that time that creates the prejudice.

MBRE argues that it was prejudiced in four ways. First, MBRE says that the appointed counsel failed to oppose a Motion for Good Faith Finding by settling co-defendant Oxford Hotel and Resorts, LLC. Doc. [77-1] at 10. But, as NorGUARD notes, MBRE does not provide any facts to support its argument that it could or would have been able to object to Oxford's settlement. It may have been an option, but MBRE has the burden to establish it by unequivocal evidence at this stage and it has not done so. Similarly, however, NorGUARD fails to show on undisputed facts that MBRE could not have objected to the settlement. So there likewise cannot be a finding that this creates no prejudice. MBRE also asserts, without citation, that because of this conduct it cannot seek contribution in *Kraslen II*, but conclusory statements like that are similarly insufficient to establish the factual basis necessary to find prejudice.

Second, MBRE contends that it was prejudiced by appointed counsel filing a motion for summary judgment on the spoliation claim. MBRE's initial issue with the motion is not that it lacked knowledge of it when it was filed or that it disagreed with arguments raised, but rather how the judge reacted to appointed counsel's arguments in the brief. Doc. [77-1] at 10. In its reply, MBRE attempts to elaborate on this by arguing how NorGUARD's interpretation of the order was wrong and explaining how the judge "spends a page and a half chastising the handling of the spoliation claim by NorGUARD's appointed defense counsel[.]" Doc. [91] at 7. But that is not a fair reading of the order. While the order discusses the spoliation claim for a page and a half, it addresses multiple issues including: (1) that to succeed on the spoliation claim, the plaintiff must be unable to prove his original case, but here plaintiff could succeed without this video because of the amount of other evidence available to him, so the spoliation claim may fail; (2) how MBRE

14

mishandled the video and falsely responded to interrogatories; and (3) how MBRE's defense counsel tried to rely on recovered portions of the video to cast doubts on Kraslen's account of the accident, which the court did not allow them to introduce as evidence. Doc. [73-1] Ex. P. Then, MBRE makes the conclusory statement that the court's order "makes it clear that the motion for summary judgment filed by NorGUARD's appointed defense counsel prejudiced MBRE's ability to resolve both *Kraslen I* and now *Kraslen II* prior to trial." Doc. [91] at 8. While MBRE offers some facts above, MBRE does not show on clear and unequivocal evidence how NorGUARD's appointed counsel's motion and arguments at summary judgment on the spoliation claim prejudiced them.

NorGUARD also has not shown that establishing prejudice is a futile endeavor. The state court order did repeatedly admonish appointed counsel's summary judgment arguments and criticized the attempt to try to introduce portions of the recovered video as evidence. [Doc. 73-1] Ex. P. So, it is not inconceivable that there could be a factual basis on which a trier of fact could find prejudice. NorGUARD also argues that MBRE's Rule 30(b)(6) witness "unequivocally testified that MBRE was not prejudiced by" appointed counsel filing the summary judgment brief. Doc. [85] at 9. But a review of the deposition transcript shows that her statements were far from an unequivocal statement that MBRE was not prejudiced.[1]

The third item raised as possible prejudice to MBRE is that the appointed defense counsel never engaged in settlement discussions with Kraslen's counsel during the January 2022 mediation. But MBRE does not support that argument with evidence. MBRE cites to the joint

---

[1] Both parties rely on portions of MBRE's Rule 30(b)(6) witness deposition to support their view of the facts. As evidenced by the parties' competing citations, MBRE's 30(b)(6) witness makes statements about the underlying events that can be interpreted to support both of their arguments. *See* [73-1] Ex. I, 50:16-51:7, 58:16-60:10. Evaluating such discrepancies requires credibility judgments that are inappropriate for summary judgment and cannot be used to either establish or disprove prejudice at this stage.

statement of facts which provides: "In January of 2022, Sanchez & Daniels represented MBRE during a mediation amongst the parties to *Kraslen I*." Doc. [73] ¶ 61. This is the only statement of undisputed fact on the entire mediation, and it does not support the argument that appointed defense counsel never engaged in settlement discussions.[2] What happened at the mediation and what appointed counsel did or did not do is not established in the record before the Court on summary judgment. As such, the mediation does not establish or disprove the existence of prejudice for the purpose of summary judgment.

Lastly, there are material disputes of fact regarding if and how NorGUARD's conduct in *Kraslen I* prejudiced MBRE in *Kraslen II*. MBRE argues that NorGUARD's appointed counsel did not request that the voluntary dismissal order bar Kraslen from re-opening discovery upon re-filing his claim. Doc. [77-1] at 11. As a result, MBRE was prejudiced by having to pay the defense costs associated with additional discovery on the spoliation claim. However, Kraslen dismissed *Kraslen I* on October 16, 2022, almost eight months after NorGUARD notified MBRE of its reservation of rights on the spoliation claim. So, it is unclear how this prejudice relates back to NorGUARD's prior failure to reserve its rights. By this time, MBRE was on notice that NorGUARD did not believe there was coverage for the spoliation claim but was providing counsel under a reservation of rights. Moreover, much like with the mediation argument, while the parties agree that the dismissal happened and that appointed counsel did not object, whether counsel could have done anything else is disputed. Doc. [73] ¶¶ 81-82. MBRE failed to establish that the prejudice from not objecting to the voluntary dismissal order exists on clear and unequivocal

---

[2] NorGUARD relies on the affidavit of Mark Patricoski to argue that Kraslen never made a demand to settle or resolve his claims against MBRE, but as discussed below, that affidavit is being struck. Therefore, it cannot create an undisputed fact for summary judgment.

evidence, but it also cannot be said that a trier of fact could find no prejudice. Therefore, it is improper to grant summary judgment for either party.

This case falls somewhere in the spectrum between *Blue Moon* and *Home*. The undisputed facts here are not as clean cut as *Blue Moon* where the insured had control of the litigation the entire time. But it is also unlike *Home*, in that the prejudice to MBRE is not clear and unequivocal. While in *Home*, the insured could point to specific motions in limine that were not used, arguments and witnesses not used at trial, and how their independent attorneys were barred from participating by the insurer, here MBRE has merely pointed to general actions taken by NorGUARD's appointed counsel during the time between the Eleventh Amended Complaint being filed and NorGUARD's reservation of rights. To be clear, MBRE may have been prejudiced for five months, particularly as a result of appointed counsel's control of significant events in the litigation during this time, but MBRE has not established how it was prejudiced based on undisputed facts that would entitle it to judgment as a matter of law.

As a result of these uncertainties, this case is most similar to *Brochu* in that undisputed facts prevent a finding of prejudice at this stage. While MBRE has not met its burden to establish prejudice by clear and unequivocal evidence, neither has NorGUARD shown that the prejudice could not be found. Prejudice is only properly decided by a judge on summary judgment when there "is no factual basis from which a jury could find prejudice." *Am. States Ins. Co. v. Nat'l Cycle, Inc.*, 631 N.E.2d 1292, 1300 (Ill. App. Ct. 1994). That is not the case here.

### iii. Waiver

Unlike equitable estoppel, waiver is not focused on the prejudice to the insured. It arises from an affirmative act by the insurer and not an operation of law. *Brochu*, 475 N.E.2d at 878. The question is whether an insurer waived its rights to raise a defense because of its conduct.

17

*Bituminous Cas. Corp. v. Fulkerson*, 571 N.E.2d 256, 265 (Ill. App. Ct. 1991). "A waiver may be express or implied, arising from acts, words, conduct, or knowledge of the insurer." *Brochu*, 475 N.E.2d at 878. No act or reliance by the insured is required. *Id.*

NorGUARD disclaims any *actual* knowledge of the spoliation claim until January 31, 2022. Doc. [73] ¶ 65. For the sake of the summary judgment motions, this fact is undisputed. However, there is a question of whether the conduct of the appointed counsel can be imputed to NorGUARD. *See Fulkerson*, 571 N.E.2d at 264–65 (finding that when the insurer's retained counsel lost documents relevant to plaintiff's claim that plaintiff was required to turn over to the insurer's retained counsel, that the actions and omissions of the retained counsel could be imputed on the insurer). But as this argument was not raised in the parties' briefs, the Court need not delve into it any further.

NorGUARD argues that it did not waive its rights to raise a noncoverage defense because it timely reserved its rights on February 22, 2022, a mere 22 days after learning of the claim. MBRE does not dispute this timeline, but instead argues that NorGUARD cannot rely on its own appointed counsel's failure to notify it of the filing as an excuse to shield itself from knowledge. In other words, MBRE asserts that through the use of reasonable diligence NorGUARD would have discovered the existence of the spoliation claim.

An insurer can waive a policy defense by continuing to defend an insured "under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense." *Am. States Ins. Co. v. Nat'l Cycle, Inc.*, 631 N.E.2d 1292, 1297 (Ill. App. Ct. 1994) (internal quotation omitted). In such cases, when an issuer is deemed to have constructive knowledge of the facts, "that constructive knowledge may be sufficient to form the basis of waiver even if actual knowledge is absent." *Lumbermen's Mut. Cas. Co. v. Sykes*, 890

N.E.2d 1086, 1100 (Ill. App. Ct. 2008). Courts have historically allowed insurers a reasonable amount of time after taking a case to investigate and reserve rights without finding that they waived the ability to do so. As an example, in *Am. States Ins. Co. v. Nat'l Cycle, Inc.*, the court found that the insurer did not waive its rights because it was unaware of the facts giving rise to the policy defense when it took three and a half months from receiving notice of the case and filing an appearance to when the insurer sent its reservation of rights letter. 631 N.E.2d 1292, 1298 (Ill. App. Ct. 1994). The court found that this length of time was reasonable for the insurer to investigate the claim, particularly when the insured was aware of the facts that gave rise to the policy defense but did not notify the insurer. The question here is whether NorGUARD, through a reasonable exercise of ordinary diligence, could have discovered the facts giving rise to its policy defense. If so, then NorGUARD would be deemed to have constructive knowledge, which is sufficient to form the basis of the waiver.

A careful review of the evidence submitted in support of the cross-summary judgment motions reveals many unanswered questions about what happened between the filing of the Eleventh Amended Complaint in September of 2021 and NorGUARD's discovery of the claim on January 31, 2022. Despite the extensive briefing, both parties brush past this period, while asking the Court to presume their version of events. At the outset, the Court is skeptical of NorGUARD's blanket assertion that it did not waive its rights because it did not have actual knowledge of the claims, when during the same period NorGUARD's appointed counsel was actively litigating the case. There are also questions of what could have been discovered through an exercise of ordinary diligence. The Seventh Circuit has noted that by virtue of taking control of a case "the insurer's duty to the insured includes not only 'the hiring of competent counsel' but also 'keeping abreast of progress and status of litigation in order that it may act intelligently and in good faith on

19

settlement offers.'" *R.C. Wegman Const. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 728 (7th Cir. 2011) (quoting 4 *Couch on Insurance* § 202:17 (3d ed. 2007)). A party's attempt to disclaim knowledge of actions taken by its own attorneys raises significant concerns; particularly when there are public policy reasons to disallow an insurer from disclaiming knowledge and control of the conduct of its own appointed counsel when it assumes a defense without reserving rights. To reward an insurer for its failure to adequately supervise its litigations would be contrary to the longstanding objectives of Illinois insurance dispute precedents, and would in essence incentivize insurers to ignore their cases. Courts do not typically reward a party for burying its head in the sand.

Moreover, there are disputes of fact over the issue of constructive knowledge. Questions remain for trial, such as what communication and supervision did NorGUARD have with its appointed counsel on the litigation strategy such that it would have discovered the spoilation claim through the exercise of reasonable diligence. The record before the court is void of any explanation about how, as the parties appear to frame it, the attorneys were operating without any oversight.[3] The parties' silence about who was directing the attorneys is a gap in the record, and one that the Court cannot ignore. Without this information there is no basis on which to grant summary judgment to either party on the issue of waiver.

### c. Adequacy of NorGUARD's Reservation of Rights Letter

The parties also dispute whether NorGUARD's February 22, 2022, reservation of rights letter was adequate. MBRE argues that NorGUARD failed to notify MBRE about the possibility of a conflict of interest and MBRE's right to independent counsel on the spoilation claim. NorGUARD argues that the reservation of rights letter did not create a conflict of interest, that

---

[3] In their depositions, Harry O'Neill, NorGUARD's insurance adjuster, and Katherine Lula, MBRE's Rule 30(b)(6) witness, both deny knowledge of the spoilation claim being filed and state that they would have expected or wished that they had heard about it from the appointed counsel. Doc. [73-1] Ex. H, 64:22-65:4, 69:4-12; Doc. [73-1] Ex. I, 44:22-45:8.

there was no conflict of interest, and that it told MBRE to submit the spoliation claim to its other insurers. If NorGUARD is found to have waived or be estopped from raising its noncoverage defense, then there is no need to consider the adequacy or the effect of the reservation of rights letter. Moreover, the burden of establishing that the conflict of interest prejudiced the insured rests with the insured. *Royal Ins. Co. v. Process Design Assocs., Inc.*, 221 Ill. App. 3d 966, 976 (1991). MBRE points to much of the same evidence of prejudice as it did for its timeliness arguments. As discussed above, there are materially disputed facts regarding whether MBRE was prejudiced so even if MBRE could establish that there was a conflict of interest. Due to the intertwined nature of these arguments, the Court defers for consideration at trial the issues related to the February 22, 2022, reservation of rights and whether there was a conflict of interest between the parties such that NorGUARD should have provided notice to MBRE of its right to independent counsel.

### d. Motion to Strike

In addition to the summary judgment motion, MBRE also filed a motion to strike the Affidavit of Mark Patricoski, Martin Kraslen's attorney in *Kraslen I and II*, that was included as an exhibit to NorGUARD's Statement of Additional Facts. Doc. [89]; Doc. [86-1]. NorGUARD did not respond to the motion to strike. MBRE asserts that NorGUARD did not identify Mark Patricoski, or any attorney for Martin Kraslen, as a disclosed witness in either its Rule 26(a)(1) initial disclosures or amended disclosures. *See* Doc. [89] at 9-18.

Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The Seventh Circuit has held that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that

its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)). However, the determination of "[w]hether a failure to comply with Rule 26(a) or (e) is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011). The Seventh Circuit provided the following factors to guide the analysis: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857.

Here, NorGUARD did not identify Mark Patricoski as a witness on its Rule 26 disclosures. As the offering party, NorGUARD bears the burden to show the failure to disclose was justified or harmless. NorGUARD did not respond to MBRE's motion or provide any basis for which its failure to disclose Patricoski could be found to be justified or harmless. Therefore, NorGUARD may not rely on Patricoski's affidavit as evidence for its motion for summary judgment. As such, MBRE's motion to strike Mark Patricoski's affidavit is granted.

## II. MBRE v. Continental

Continental issued Commercial General Liability Policy No. 6024118999 to MBRE, which had the effective dates of March 1, 2016, to March 1, 2017. After Kraslen added the spoliation claim, MBRE demanded a defense and indemnification from Continental in both *Kraslen I* and *Kraslen II*. Continental disclaimed coverage for the spoliation claims in both cases.

MBRE filed the instant action seeking to enforce both a duty to defend and a duty to indemnify. Continental denied coverage and did not file a declaratory action. As the duty to defend is broader than the duty to indemnify, the court will look at that first. *See St. Paul Guardian Ins.*

*Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1039 (7th Cir. 2024). Continental argues that it has no duty to defend MBRE under the policy, while MBRE argues that Continental had a duty to defend and is in breach of that duty.

### a. Duty to Defend

As discussed above under Illinois law, an insurer has three options if it believes it does not owe a duty to defend: "(1) seek a declaratory judgment regarding its obligations before trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend and estopped from asserting defenses as to payment based on non-coverage." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 349 (7th Cir. 2010). Because Continental did not seek a declaratory judgment or defend MBRE under a reservation of rights, it is undisputed that it chose the narrowest path. Therefore, if Continental breached its duty to defend, it will be estopped from asserting a defense based on non-coverage. *Id.* "The insured carries the initial burden to show that its loss falls within the terms of the policy." *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 99 F.4th 1035, 1040 (7th Cir. 2024).

Courts must compare the allegations in the underlying complaint to the relevant provisions of the insurance policy to determine if an insurer has a duty to defend the insured. *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 937 (Ill. App. Ct. 2011). "The insurer may not refuse to defend unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1136 (1999) (internal citation and quotations omitted).

Continental contends that under the clear and unambiguous terms of the policy, it does not owe a duty to defend against the spoliation claim because Kraslen does not allege in either lawsuit, damage to or loss of tangible property. The Continental policy provides coverage for damages because of "bodily injury" or "property damage", caused by an "occurrence" that occurs during the policy period, but does not create a duty to defend against suits for which the insurance does not apply. Doc. [73] ¶ 36. The Continental Policy defines "property damage", in part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property; and [l]oss of use of tangible property that is not physically injured." *Id.* ¶ 37 (internal quotation omitted). Although the policy does not define tangible property, it defines "property damages" as:

> For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

*Id.* ¶ 38.

According to Continental, a spoliation claim alleges damage to a cause of action. Damage to a cause of action is intangible. As such, Continental asserts that Kraslen's spoliation claim does not allege loss or damage to tangible property, therefore it is not covered by the policy and Continental has no duty to defend. MBRE argues that Kraslen's claim is about the destruction of the video, which it considers to be tangible property, and therefore the claim should be covered.

Illinois courts have consistently held that "a cause of action does not qualify as tangible property, and it can therefore be said that a spoliation suit seeks to recover damages to 'intangible property.'" *LKQ Smart Parts*, 963 N.E.2d at 941 (quoting *Essex Ins. Co. v. Wright*, 862 N.E.2d 1194, 1196 (2007)). *See also Am. Highway, Inc. v. Travelers Companies, Inc.*, 686 F. Supp. 3d 745, 751 (N.D. Ill. 2023) ("economic injuries, such as diminution in value, do not trigger coverage.").

24

So, it is clear that the spoliation claim itself cannot be the basis of liability. This alone provides a basis for summary judgment to Continental.

However, as MBRE has identified, one Illinois appellate court went a step further than merely looking at the spoliation claim. In *LKQ Smart Parts*, the underlying spoliation complaint alleged, among other things, that the "destruction of the subject Nissan Pathfinder deprived Plaintiff of the key piece of evidence necessary to prove an otherwise valid product liability/negligence lawsuit under the Survival and Wrongful Death Acts against the manufacturer of the vehicle." 963 N.E.2d at 934. The insurer argued that the plaintiff's spoliation claim was seeking damages measured by the diminution of his claim, and therefore it was intangible and not covered by the policy. The insured argued that it was not the spoliation claim, but the loss of the use of the vehicle in the lawsuit that was the tangible loss covered by the policy. *Id.* at 941. To evaluate this, the court asked whether the plaintiff's complaint alleged a loss that would be covered by the policy. The court found that the underlying complaint had clear factual allegations regarding the destruction of the vehicle and the plaintiff's resulting inability to use the vehicle as evidence in his lawsuit. *Id.* at 942. The court concluded that this meant his damages were a result of the loss of use and destruction of the vehicle, even if they were measured as the diminution of value of the plaintiff's products liability claim. *Id.* As the vehicle was agreed to be a type of property covered by the policy, the court held that the physical injury to the covered property alleged in the complaint fell within the policy.

Here, the complaint in *Kraslen II* alleges that MBRE received "a download link to the video footage of [Kraslen's] fall and injury[.]" Doc. [73-1] Ex. A ¶ 9. Kraslen alleges that MBRE had access and previewed the footage of his fall. *Id.* ¶ 12. Throughout the complaint, Kraslen refers to the lost property as "the video footage of fall via DropBox download link to the video file

'marty.avo'." *Id.* ¶ 14. Kraslen alleges that MBRE breached its duty to preserve the video file through negligent acts or omissions, which deprived him of a key piece of evidence in his underlying suit. *Id.* ¶¶ 23-25.

MBRE asks the Court to equate the damage to the video file to the damage to the vehicle in *LKQ Smart Parts*. The fatal flaw for MBRE is that a video link is not tangible property in the same way that a vehicle is. In *LKQ Smart Parts*, the object that was damaged, the vehicle, was covered property under the insurance policy. The court held that the policy in LKQ covered "claims for intangible or economic damages where there is physical injury to covered property and the damages sought arise from that property damage." 963 N.E.2d at 943. There was a physical injury (the destruction) to tangible property (the vehicle), as covered by the policy. Here, the object alleged to have been lost or destroyed was a link to a video file sent via DropBox. Even if the Court were to view the damages as being more than just Kraslen's cause of action, following the reasoning in *LKQ Smart Parts*, the underlying video link is still not covered property by definition in the Continental policy because the Continental policy explicitly excludes "electronic data" from the definition of tangible property.

MBRE argues that the video link is either not electronic data or that it is ambiguous whether it is electronic data. "While ambiguities in insurance policies are to be construed in favor of the insured, courts should not invent ambiguities where none exists." *Horning Wire Corp. v. Home Indem. Co.*, 8 F.3d 587, 589 (7th Cir. 1993) (internal citation omitted). The video, sent via a DropBox link in electronic form, is clearly electronic data by the plain meaning of the phrase. As defined in the policy "electronic data means information, facts or programs" which would include the data composing an electronic video file. Doc. [73] ¶ 38. Moreover, when asked to address the issue of what qualifies as tangible property, courts have made a distinction between the physical

components of a computer and the data and information stored within the computer, with the latter being electronic data and the former not. *See Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 96 (4th Cir. 2003) (finding that "circuits, switches, drives, and any other physical components of the computer" were tangible property but "the loss of instructions to configure the switches or the loss of data stored magnetically" were not); *Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 915 (N.D. Ill. 2014) (distinguishing between the loss of the use of computer equipment and the loss of electronic data comprising proprietary trade secrets and confidential information). The Court finds that Continental had no duty to defend MBRE under the plain meaning of the terms of the policy based on the undisputed facts in the record.[4]

### b. Estoppel

MBRE argues that Continental should be estopped from raising any coverage defense due to its breach of the duty to defend. The general rule under Illinois law is that an insurer that takes the position that there is no coverage for the facts alleged in a complaint "may not simply refuse to defend the insured." *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1134 (1999). Instead, the insurer has two options: "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Id.* at 1135. Deciding not to take either step puts the insurer in a perilous position, because if the insurer "is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." *Id.* The estoppel doctrine is deeply rooted in Illinois jurisprudence because an insurer's duty to defend is so fundamental an obligation that a breach of that duty constitutes a repudiation of its contract.

---

[4] The Court need not address the parties' other arguments. Further, as it is unnecessary for this decision, the Court makes no finding or ruling regarding whether the video, as alleged in *Kraslen I* or *Kraslen II*, was ever in MBRE's possession, care, custody, or control.

However, the estoppel only applies where the insurer breached its duty to defend. *Id.* "Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered." *Id.* Thus, where the policy and the complaint are compared and there was clearly no coverage or potential for coverage, estoppel does not apply. *Id.*

Thus, while MBRE is correct that the case law largely favors an insurer either taking up the defense under a reservation of rights or filing a declaratory action if it believes that it does not owe a duty to defend, estoppel only applies when there was a breach of the duty to defend. As Continental had no duty to defend under the terms of the policy, it is not in breach of that duty.

At first blush, the diverging treatment of NorGUARD and Continental may seem incongruent. After all, NorGUARD appears to have followed the precedent and took up the defense of a claim it did not believe was covered under a reservation of rights and filed a declaratory judgment action, while Continental merely refused to defend. But on closer inspection, it is not a one-to-one comparison.

Although a potentially risky gamble, Continental took a viable path and disclaimed all coverage because when comparing the policy and the complaint, there was clearly no coverage. *See Blue Moon*, 927 F.3d at 1012. There is an inherent risk that a court would disagree and estop Continental from raising any policy defenses. *Id.* But in taking this route, Continental never appointed counsel and never took control of the litigation away from MBRE.

In contrast, NorGUARD provided coverage and appointed the counsel who was handling the litigation when the uncovered claim was added. This meant NorGUARD fundamentally had a different relationship to MBRE than Continental. So, the consideration is not merely the coverage terms under the policy, but whether NorGUARD prejudiced MBRE in taking up the

28

defense. *Peppers*, 355 N.E.2d at 29 ("It is generally held that an insurer may be estopped from asserting a defense of noncoverage when the insurer undertakes the defense of an action against the insured. However, it is also the general rule that the undertaking must result in some prejudice to the insured.").  Even when an insurer has a reservation of rights and filed a declaratory action, it may still be estopped if its conduct prejudiced the insured.  As the Seventh Circuit commented, "[i]t is inconceivable that Illinois would allow a reservation of rights to give an insurer license to prejudice its insured however it wanted." *Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 452 (7th Cir. 2000).  Instead, courts apply estoppel to insurers who mishandle their insured's defense, and in doing so create the situation that left the insured in a lurch as doing otherwise, "would be to encourage the worst possible behavior." *Id.* at 453.  Therefore, while it is possible that NorGUARD may have prejudiced MBRE, Continental could not prejudice MBRE in that way because it never had control over MBRE's defense.

### Conclusion

For the reasons stated above,  Plaintiff NorGUARD's Motion for Summary Judgment on the Duty to Defend is denied, Doc. [74], Defendant MBRE's Motion for Summary Judgment against NorGUARD is denied, Doc. [77], Plaintiff NorGUARD's Motion for Summary Judgment on estoppel is denied, Doc. [82], Defendant MBRE's Motion to Strike is granted, Doc. [89], Defendant Continental's Motion for Summary Judgment is granted, Doc. [76], and Plaintiff MBRE's Motion for Summary Judgment against Continental is denied, Doc. [78].


**SO ORDERED.**

Dated:  January 31, 2025

Sunil R. Harjani
United States District Judge