**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NORGUARD INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Case No. 22 cv 3007 |
| MB REAL ESTATE SERVICES, INC., | Honorable Sunil R. Harjani |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In 2016, Martin Kraslen fell down a sewer pit while working for MB Real Estate Services, Inc. (MBRE) at the LondonHouse hotel in Chicago. Now, almost ten years, three lawsuits, and one federal bench trial later, at least one part of this journey is coming to an end. In this action, NorGUARD Insurance Company seeks a declaratory judgment that it has no obligation under its worker compensation insurance policy to provide a defense, indemnify, or pay any expenses incurred by its insured, MBRE, during a state court litigation over a video evidence spoliation claim—a claim that grew out of Kraslen's original negligence action. [46]. MBRE responds that NorGUARD should be equitably estopped from disclaiming coverage due to its conduct in the prior lawsuit.

Having considered the evidence presented during the bench trial, the parties' proposed findings of fact and conclusions of law, the relevant authorities, and the record as a whole, the Court finds that NorGUARD had no duty to defend MBRE against the state court spoliation claim and MBRE failed to show that NorGUARD should be equitably estopped from denying coverage. Pursuant to Federal Rule of Civil Procedure 52(a), the Court now issues this memorandum opinion and order resolving all claims. For the reasons stated below, judgment will be entered under

Federal Rule of Civil Procedure 58 in favor of NorGUARD. In addition, MBRE's motion for sanctions [136] is granted in part and denied in part.

## I. Findings of Fact

### A. Background

On May 13, 2016, while Martin Kraslen was working as the Chief Operating Engineer for MBRE at LondonHouse Hotel located at 85 East Upper Wacker Drive in Chicago, Illinois, he was injured when he fell through a sewage access cover. [147] at 17.[1] On May 16, 2016, MBRE provided NorGUARD—MBRE's workers compensation insurance provider—with notice of Kraslen's injury.[2] *Id.* Multiple lawsuits and claims then followed.

### B. *Kraslen I*

Kraslen filed *Martin Kraslen v. W.E. O'Neil Construction Company, et al*, Case No. 18 L 4183 (Cook Cty.) ("*Kraslen I*") against multiple defendants on April 24, 2018, but not against MBRE. *Id.* MBRE was brought into the case on March 12, 2019, when W.E. O'Neil filed a Third-Party Complaint for Contribution. *Id.* The other direct defendants followed suit. *Id.* NorGUARD agreed to defend MBRE in connection with these contribution claims. *Id.* at 18. NorGUARD appointed Sanchez & Daniels (formerly Sanchez Daniels & Hoffman) to represent MBRE in *Kraslen I. Id.* When retained, MBRE did not object to Sanchez & Daniels appointment as defense counsel. Tr. 370:19-21.

---

[1] In the Final Pretrial Order, NorGUARD and MBRE submitted a series of agreed stipulations to the Court. [147] at 17–21. These stipulations were admitted during the bench trial. [162] at 53:8-17.

[2] NorGUARD issued a Worker's Compensation and Employer's Liability Insurance Policy to MBRE for the period of March 1, 2016, to March 1, 2017. [147] at 17. NorGUARD's Policy provided worker's compensation insurance and employers liability coverage. *Id.* This case does not involve the amounts paid under the worker's compensation claims.

During the relevant time period of *Kraslen I*, Kelly Cronin was the attorney at Sanchez & Daniels working on behalf of MBRE. In this role she communicated with both MBRE and NorGUARD. Cronin reported to Harry O'Neill at NorGUARD and her primary contact at MBRE was Michael Graham. Tr. 59:17-25, 63:17-21. O'Neill was the senior claims representative at NorGUARD assigned to Kraslen's worker's compensation file and the claims adjuster assigned to monitor the lawsuit. Tr. 251:4-252:7. Cronin was in regular contact with O'Neill and Graham and kept them apprised of developments in the litigation. Tr. 60:1-6, 63:22-64:1, 184:16-185:5. When Cronin needed information or documents for *Kraslen I*, she would ask Graham. Tr. 64:14-23. Cronin also communicated with Katherine Lula, MBRE's General Counsel, about developments in the case, but she considered Graham to be a liaison between them. Tr. 64:24-65:5, 374:2-375:4, 377:1-10.

### a. Notice of the Spoliation Claims

While litigating *Kraslen I*, Kraslen became aware of the existence of a video that recorded his fall.[3] A direct defendant in *Kraslen I* originally possessed the video. Graham received a link to a section of this video from one of the direct defendants that was 15 seconds long and included Kraslen's fall, which he watched but did not download. DEX301 at 77:7-12, 150:11-18. As Graham did not download the video before the link stopped working, MBRE failed to retain a copy of the video. *Id.* at 150:13-18. Ultimately, all the defendants in *Kraslen I* either lost or failed to retain this video.

After learning of the lost video, Kraslen filed a Tenth Amended Complaint in *Kraslen I* that included negligent spoliation claims against LondonHouse, Oxford Hotels, as well as W.E. O'Neil on July 7, 2021. [147] at 18. Cronin informed NorGUARD of this filing and Oxford Hotels'

---

[3] The specific details regarding which defendants had the video and when Kraslen learned about it are not relevant to this litigation.

request to admit directed at MBRE on August 11, 2021. PEX8; Tr. 73:25-74:16.   Cronin also informed MBRE of the request and worked with Graham on the responses. Tr. 75:15-22.

MBRE was brought into the spoliation claims on September 10, 2021, when W.E. O'Neil, and Oxford Hotel and Resorts each filed an Amended Third-Party Complaint against MBRE, asserting claims for negligent spoliation of evidence.[4] [147] at 18.   On September 14, 2021, Kraslen filed an Eleventh Amended Complaint, asserting a negligent spoliation of evidence claim against MBRE, which was his only claim asserted against MBRE. *Id.*

At the same time the amended complaints were filed against MBRE, NorGUARD was asked if it possessed a copy of the video. Tr. 76:14-77:1; PEX8.   On September 20, 2021, Defendant National Wrecking sent a letter to NorGUARD's counsel, Peter Puchalski, requesting that it produce a copy of the video. PEX18.   On October 5, 2021, O'Neill, Puchalski, and Cronin discussed the subpoena from National Wrecking and the request to "make sure that we uncovered every single possible stone" to locate the video. Tr. 79:15-80:22, 273:5-18; PEX44.[5]   Both MBRE and NorGUARD denied that they were in possession of the video.

Cronin informed MBRE of the spoliation claims against it, both from Kraslen and the direct defendants. Tr. 81:5-11.   Although Cronin could not recall when exactly she advised MBRE, she believes that she told Graham around the filing of the claims. Tr. 81:21-82:1, 123:14-20.   She also notified NorGUARD that Kraslen was going to bring a spoliation claim against MBRE, although she advised that it was being brought as a "CYA" as Kraslen's counsel had indicated that they were

---

[4] The other direct defendants would later do the same with Alliance Construction, Norman Mechanical, Londonhouse Chicago Leasco, Oxford Capital Group, and 360 N. Michigan amending their complaints to include claims of negligent spoliation against MBRE on September 13, 2021, National Wrecking doing so on September 21, 2021, and Alliance Concrete on October 4, 2021. [147] at 18.

[5] O'Neill testified that "EL counsel" in the claim notes (PEX44) was a reference to employer liability counsel meaning Cronin and "DC" was also used to reference Cronin. Tr. 272:4-18.

not going to pursue the claim against MBRE. Tr. 82:14-23, 84:6-14, 135:24-137:8; PEX11. However, as with her communications with Graham, Cronin did not recall when exactly she notified O'Neill of Kraslen's spoliation claim, but that her practice would have been to notify O'Neill when she notified MBRE.[6] Tr. 85:4-6, 123:14-20.

On December 15, 2021, Cronin emailed O'Neill asking him to advise on the mediator payment and informing him that the spoliation counterclaims should be filed to reserve their rights to claim contribution. Tr. 138:11-14; PEX24. O'Neill responded that he would enter the check for the mediator and that he did not know what the spoliation claims she referenced were. PEX24. Cronin replied that she had asked for his authority and he said he would get back to her. *Id.* To which O'Neill responded that he thought these had already been filed and she should proceed. *Id.* However, O'Neill testified that Cronin did not need his authority to file the counterclaims. Tr. 280:20-22, 321:14-21. Cronin filed MBRE's counterclaims on December 28, 2021. Tr. 90:20-91:5.

### b. January 2022

The posturing around the spoliation claims changed in January 2022. On January 11, 2022, Cronin emailed O'Neill asking to speak about the upcoming mediation and that Kraslen's counsel was "honing in on the spoliation claims against" MBRE, and that Kraslen intended to file a

---

[6] O'Neill testified that he was not notified of Kraslen's spoliation claim until January 11, 2022. Tr. 270:9-21. The Court does not find this testimony to be credible when compared with Cronin's credible testimony about her practices and the evidence in the record showing discussions between Cronin and O'Neill about spoliation claims. Tr. 85:4-6; PEX24. On October 5, 2021, O'Neill wrote a claim note that he discussed the subpoena and the spoliation claims with Cronin and the worker's compensation attorney, and that Cronin believed the spoliation claims to be a red herring that would be dropped when all parties respond. PEX44. On December 15, 2021, Cronin emailed O'Neill about filing counterclaims for contribution against the co-defendants on the spoliation claims, which O'Neill later responded that she should proceed with the claims and that he thought they had already been brought. PEX24. The Court finds that while O'Neill may not have understood the magnitude of the spoliation claims until January, he was on notice of their existence prior to January 11, 2022.

summary judgment motion against MBRE on the spoliation claim. PEX24. According to Cronin, Kraslen wanted a lien waiver and "fresh money" (i.e. cash) from MBRE, but Cronin did not think that would resolve the entire mediation. Tr. 140:18-141:6.

Kraslen was not the only party filing for summary judgment in *Kraslen I*. On January 13, 2022, Cronin filed a combined Motion for Summary Judgment seeking judgment in MBRE's favor on all spoliation claims asserted against MBRE. [147] at 19. In addition to her discussions with O'Neill, Cronin conferred with Graham before filing the motion for summary judgment in *Kraslen I*. Tr. 96:3-6.

Another change in January 2022 was Cronin and O'Neill's understanding of the application of the *Kotecki* cap. A *Kotecki* cap limits an employer's, or its insurance company's, liability in employee injury tort actions to what it already paid under the related worker's compensation claim. Here, the *Kotecki* cap would limit what MBRE/NorGUARD owed in the third-party complaints for contribution. When the spoliation claims were filed, Cronin and O'Neill assumed those claims, like the other contribution claims, were covered by the *Kotecki* cap to the amount of the worker's compensation lien. Tr. 129:11-22, 309:18-310:3. At some point between when the spoliation claims were filed and January 2022, Cronin's firm researched the issue of the *Kotecki* cap and its application to the spoliation claims. Tr. 129:17-130:2. After this research, Cronin advised NorGUARD that the spoliation claims would not be capped to the amount of the workers compensation lien. Tr. 129:11-130:5, 326:4-15. The fact that the spoliation claims would not be covered by the *Kotecki* cap is what prompted O'Neill to obtain and send the Eleventh Amended Complaint to the coverage department.[7] Tr. 275:8-16, 291:24-292:15.

---

[7] The Court does not address the merits of whether Cronin and O'Neill's *Kotecki* analysis is correct as that is not an issue before the Court, rather the matter relevant to this decision is what the individuals thought the *Kotecki* application was to this case.

### c. NorGUARD's Denial of Coverage for the Spoliation Claim

NorGUARD's coverage department first became aware of the *Kraslen I* litigation on February 1, 2022. Tr. 190:23-191:1. After reviewing the Eleventh Amended Complaint, NorGUARD's coverage department determined there was no coverage for the spoliation claim in *Kraslen I* under the policy. Tr. 201:19-202:1. The coverage department then retained coverage counsel who confirmed its findings and prepared a coverage position letter to send to MBRE. Tr. 202:4-21.

In a letter sent on February 22, 2022, NorGUARD advised MBRE that there was no coverage under its Policy for the spoliation claims asserted in *Kraslen I*. [147] at 19; PEX27. NorGUARD also advised that, notwithstanding its coverage position, it would defend MBRE in connection with the spoliation claims, subject to a complete reservation of its rights under its insurance policy. [147] at 19; PEX27.

Cronin was not involved in the coverage issue and did not discuss coverage with NorGUARD. Tr. 106:25-107:3, 107:11-20, 135:4-7. Cronin was first notified of a coverage issue when someone outside of NorGUARD brought it to her attention. Tr. 107:6-10, 184:1-2. O'Neill did not discuss the coverage issue with Cronin as he believed it would be improper because there is "a wall between the desk adjuster and those kind of coverage discussions." Tr. 293:7-17.

### d. Global Mediation

A global mediation occurred between all the remaining parties in *Kraslen I* on February 23, 2022. Cronin attended as counsel for MBRE and MBRE was aware of Cronin's attendance at the mediation on its behalf. Tr. 104:14-16, 185:4-5, 415:1-11, 437:17-18. No one from MBRE was at the mediation. Tr. 285:19-22. The mediation ended early when Kraslen left because the direct defendants did not offer enough money. Tr. 104:25-105:4, 283:3-6, 416:16-23. The mediator

advised that Kraslen was looking for $700,000-$800,000 from the direct defendants and then for MBRE to waive its lien.[8] PEX44. Kraslen left after only being offered $330,000. PEX44. Kraslen did not make a demand of NorGUARD or MBRE to settle the spoliation claim. Tr. 105:5-7. However, in advance of the mediation, Kraslen had asked NorGUARD to waive the worker's compensation lien, but that would have left the spoliation claims in the case. Tr. 105:12-19. In Cronin's view, she could protect MBRE's rights by refusing to waive the worker's compensation lien and refusing to put down fresh money, which is what she did. Tr. 150:9-11.

### e. Conclusion of *Kraslen I*

On July 5, 2022, the court denied all parties' summary judgment motions. [147] at 19. After this denial, NorGUARD replaced Sanchez and Daniels with Robert Hogan of Nyhan, Bambrick, Kinzie, & Lowery to represent MBRE in *Kraslen I*. *Id.* at 20. NorGUARD did not ask for MBRE's approval to do so, nor did MBRE object.

*Kraslen I* was set for trial on October 12, 2022. *Id.* At the pretrial conference, Hogan presented a motion in limine on behalf of MBRE which argued that Kraslen could not prove his spoliation claim because he lacked a damages expert, that he was not prejudiced by the loss of the video because the only testimony about his fall was his own unrebutted claim about what happened, and MBRE did not have a duty to preserve the video. Tr. 290:10-291:23, 476:22-481:8. After that, there were two or three days of a pretrial conference with Judge Quinn discussing settlement and evidence issues. Tr. 481:20-482:20. The possibility of settlement was discussed between MBRE and Kraslen, but an agreement was not reached. Tr. 515:3-15. Then on October 18, 2022, Kraslen voluntarily dismissed *Kraslen I*. Tr. 402:16-23; PEX33.

---

[8] The lien is the entitlement of an employer under the Workers' Compensation Act to recover a percentage of what the employee recovers from third parties in litigation. Tr. 283:20-284:10; *see* 820 ILCS 305/5(b).

NorGUARD paid for the entirety of MBRE's defense in *Kraslen I* and did not seek reimbursement of any costs or fees. [147] at 20; Tr. 354:3-7, 355:15-18. MBRE never asked defense counsel to employ a different strategy or expressed any concerns about the litigation or counsel's actions. Tr. 65:17-25, 408:15-410:16. MBRE was not upset, nor did it find it unusual that the global settlement failed in February 2022, even after receiving NorGUARD's reservation of rights. Tr. 418:23-419:3. MBRE also did not attempt to settle separately with Kraslen during *Kraslen I* after becoming aware of NorGUARD's reservation of rights and the uncovered spoliation claim. Tr. 438:6-9, 438:22-439:9.

### C. *Kraslen II*

On February 14, 2023, Kraslen filed *Martin Kraslen v. MB Real Estate Services, Inc. d/b/a MB Real Estate*, Case No. 2023 L 001592 (Cook Cty.) ("*Kraslen II*") in state court against only MBRE alleging a single count of negligent spoliation. [147] at 20. NorGUARD's coverage department reviewed the complaint and determined there was no coverage. Tr. 213:15-21. On April 14, 2023, NorGUARD disclaimed a duty to defend and indemnify MBRE in connection with *Kraslen II*. [147] at 20. MBRE hired its own counsel to defend it in *Kraslen II*.

On February 24, 2025, Kraslen and MBRE entered into a Consent Judgment and Assignment to settle *Kraslen II*. [147] at 21. This judgment was entered in favor of Kraslen for $3,436,500, with MBRE to pay Kraslen $325,000 in cash and assign its rights to pursue claims against NorGUARD so Kraslen could obtain the rest of the judgment from NorGUARD.[9] PEX40.

### D. Federal Declaratory Judgment Action

On June 8, 2022, NorGUARD filed this federal lawsuit for a declaratory judgment of no coverage for the spoliation claims asserted against MBRE in *Kraslen I*. [147] at 21. MBRE filed

---

[9] There was no testimony at the trial or evidence in the record as to how this settlement was reached.

an answer to the complaint on September 12, 2022. [16]. This action was then stayed, on MBRE's motion, from January 18, 2023, through May 10, 2023. [40]; [45].

After the case resumed, on May 19, 2023, NorGUARD filed an amended complaint seeking a declaratory judgment that it is under no obligation to provide a defense to or indemnify MBRE, or pay any expenses incurred by it, in connection with the spoliation claims asserted against MBRE in *Kraslen II* and that the policy does not provide coverage for damages and/or claims arising out of *Kraslen II*. [46]. MBRE answered NorGUARD's amended complaint and raised several affirmative defenses. [47].

## II. Conclusions of Law

With the facts established, the Court turns to the legal arguments. NorGUARD contends that it had no duty to defend MBRE in *Kraslen II* and that it cannot be estopped from denying coverage. In response, MBRE argues that NorGUARD should be equitably estopped from denying coverage because of its conduct in *Kraslen I*.

### A. Duty to Defend

The first question relevant to this analysis is whether NorGUARD owed MBRE a duty to defend under the terms of its insurance policy. As discussed in the Court's prior summary judgment opinion, NorGUARD had no duty to defend the spoliation claim under its policy. *NorGUARD Ins. Co. v. MB Real Est. Servs., Inc.*, 2025 WL 358967, at *3 (N.D. Ill. Jan. 31, 2025). As NorGUARD had no duty to defend, MBRE can only prevail if it establishes a basis to equitably estop NorGUARD from denying coverage.

### B. Equitable Estoppel

Under Illinois law, MBRE has the burden to establish equitable estoppel "by clear, precise and unequivocal evidence." *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178, 1181 (7th Cir. 1994)

(citing *Western Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 879 (Ill. 1985)). The foundation for estoppel is that the insurer's conduct or representations misled the insured to the insured's detriment. *Id.* at 1182. Therefore, if an insurer undertakes its insured's defense without reserving its rights to contest the coverage and that undertaking prejudices the insured, the insurer may be estopped from later denying coverage. *Id.*

MBRE is required to make a threefold showing to establish equitable estoppel. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1013 (7th Cir. 2019). MBRE needs to show: (1) NorGUARD misled MBRE, (2) MBRE reasonably relied on NorGUARD's misleading act or statement, and (3) a resulting prejudice to MBRE. *Id.* "Prejudice will not be conclusively presumed from the [insurer's] mere entry of appearance and assumption of the defense." *Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 29 (Ill. 1976). "Whether an insured is prejudiced by an insurer's conduct in entering an appearance and assuming the defense of an action is a question of fact." *Id.* "If, however, by the insurer's assumption of the defense the insured has been inducted to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage." *Id.* But "[m]ere delay in formally raising the issue of non-coverage is not sufficient to establish prejudice by clear, concise and unequivocal evidence." *Stage 2*, 14 F.3d at 1183 (citing *Brochu*, 475 N.E.2d at 879).

### a. *Kraslen II*

In this action, NorGUARD seeks a declaratory judgment as to its obligations in *Kraslen II*,[10] so the Court begins its analysis there. When looking at NorGUARD's conduct in *Kraslen II* in isolation, there is no possible application of equitable estoppel. NorGUARD did not assume MBRE's defense in *Kraslen II*. From the inception of *Kraslen II*, NorGUARD declined coverage

---

[10] The Amended Complaint seeks a declaratory action in *Kraslen II* (referred to as the "2023 Lawsuit" in the Amended Complaint) not in *Kraslen I*, which was voluntarily dismissed by Kraslen in October 2022.

and pursued a declaratory judgment finding it did not owe MBRE a duty to defend. This is one of the three options available to an insurer when it believes there is no coverage. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 349 (7th Cir. 2010). This Court previously reviewed the insurance policy and determined that there was no coverage. *See NorGUARD*, 2025 WL 358967, at *3. When looking at *Kraslen II* in a vacuum, as NorGUARD did not undertake MBRE's defense in *Kraslen II*, there is no basis on which to find it should be equitably estopped from denying coverage.

Instead, MBRE's argument is that NorGUARD's conduct in *Kraslen I*, where it had assumed MBRE's defense, and for a time was operating without a reservation of rights, prejudiced MBRE and thus NorGUARD should be equitably estopped from denying coverage in *Kraslen II*. Despite being asked by the Court to provide precedent to support this novel theory of prejudice reaching beyond the bounds of the subject litigation, MBRE does not address this issue in its post-trial brief. NorGUARD notified the Court that no authority exists for either allowing or prohibiting it. The Court's independent research likewise resulted in no definitive authority.

Lacking guidance from Illinois courts, this Court must interpret Illinois law the way the Illinois courts would. The Illinois Supreme Court has stated that "[e]stoppel refers to an abatement, raised by law, of rights and privileges of the insurer where it would be inequitable to permit their assertion; such relinquishment need not be voluntary, intended, or desired by the insurer, but it necessarily requires prejudicial reliance on the part of the insured." *Brochu*, 475 N.E.2d at 879. The purpose of equitable estoppel in an insurance defense context is to bar an insurer from denying coverage when its conduct or representation misled its insured to the insured's detriment. There is no inherent limiting principle to require that only the conduct in a specific court case is applicable when there is additional conduct between the insured and insurer

relating to the same underlying facts. Thus, the Court will consider all of NorGUARD's conduct as it relates to Kraslen's spoliation claim against MBRE. However, to succeed, MBRE must establish "by clear, concise, and unequivocal evidence" that it was prejudiced in *Kraslen II* by NorGUARD's conduct in *Kraslen I* before NorGUARD reserved its rights to deny coverage to the spoliation claim. *Brochu*, 475 N.E.2d at 879.

### b. Prejudice

NorGUARD assumed MBRE's defense in *Kraslen I*, but the mere assumption of its defense is not sufficient to establish prejudice. *Peppers*, 355 N.E.2d at 29. MBRE argues it was prejudiced because NorGUARD took control of its defense in *Kraslen I.* Under Illinois law, the question of prejudice is not whether MBRE could have obtained a better result for itself but whether NorGUARD's conduct induced MBRE to surrender its rights to control its own defense. *Blue Moon*, 927 F.3d at 1013. A key factor when determining prejudice is the extent the insured relied on the insurer for his defense. *Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 2014 IL App (1st) 113755, ¶ 46.

Before addressing NorGUARD's and MBRE's conduct, it is helpful to consider cases where courts have granted equitable estoppel. For example, in *Willis Corroon Corp. v. Home Ins. Co.*, the insurer undertook the defense with a reservation of rights and hired an attorney, but did not give the attorney settlement authority (despite counsel's request and advice to settle) and refused to pay the fee of the expert counsel wanted to use. 203 F.3d 449, 450–51 (7th Cir. 2000). Then ten days prior to trial, the insurer sent counsel a letter advising him that he had committed legal malpractice resulting in the attorney filing a motion to withdraw, which the court granted four days before trial, finding the insurer's conduct questionable. *Id.* at 451. Despite appearing at the motion hearing, the insurer did not obtain representation for the insured, and no one asked for

a continuance of the trial date, then with "everything in disarray, the case was settled when" the insurer paid the plaintiff $2 million. *Id.* Meanwhile, one day after counsel filed a request to withdraw, the insurer filed a declaratory judgment action against the insured seeking a declaration that it had no obligation to pay any judgment rendered against the insured. *Id.* The court found that the insurer deprived the insured of counsel ten days before trial, refused the insured the opportunity to settle the case prior to trial, deprived the insured of a crucial expert witness and "effectively doubled the settlement value of the case by its ham-handed and witless management on the eve of trial." *Id.* The Seventh Circuit affirmed the district court's application of equitable estoppel, despite the insurer reserving its rights and filing a declaratory action, because the insurer "failed to provide an adequate defense, in fact [it] completely undermined the defense which it ostensibly provided[.]" *Id.* at 453.

Another case where the court found an insurer to be equitably estopped was *Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F. Supp. 2d 901 (N.D. Ill. 2000). In *Home*, the insured notified its excess insurance carrier of the case on October 12, 1998, shortly before the trial was scheduled to begin. 95 F. Supp. 2d at 903. The insurer's claims analyst determined that the insurance company would be reserving its rights regarding the insured's perceived late notice of the claim and that the insurer had no duty to defend under the policy. *Id.* Between October 12 and October 19, the insurer advised the insured that it wanted its counsel to take the lead in defending the insured, but on October 30 the insurer notified the insured's counsel that its services were no longer required, and the insurer would not pay its fees to attend the trial. *Id.* Then the insurer's counsel (1) did not present any of the motions in limine that were prepared by the insured's counsel, (2) did not object to any of the oppositions' motions in limine, (3) presented no argument during its opening statement at trial contesting the amount of damages, (4) did not cross-examine the opposing parties

14

two expert witnesses as to damages, and (5) did not call any of the three expert witnesses engaged by the insured's counsel on damages or present any of its own expert witnesses. *Id.* at 903–04. After the closing arguments but before the jury returned with a verdict, the insurer filed a declaratory judgment action against the insured. *Id.* at 904. The court found that the insurer deliberately waited to file its already-prepared federal complaint for declaratory judgment until that case was sent to the jury, so that the insured could not "do anything but sit by helplessly and await the results of those jury deliberations." *Id.* at 905. The court found that because the insurer exercised "total dominance" over the defense, it could not walk away from the consequences of its actions, and as such should be equitably estopped from denying coverage. *Id.* at 907–08.

This case is very different from *Willis* and *Home*. Here, MBRE was aware that Graham, an MBRE employee, was alleged to have lost the video and of the resulting spoliation claims against it. Cronin, MBRE's counsel, worked with Graham on responding to the requests to admit regarding the lost video and informed him of the claims around when they were filed.[11] Tr. 75:15-22, 81:5-82:1. Cronin also conferred with Graham about the summary judgment motion before it was filed. Tr. 96:4-6. While mistaken about the application of *Kotecki* to the spoliation claim, the consistent and credible testimony of Cronin, Hogan, and O'Neill on this point was that they either did not know that the spoliation claim was uncovered or that it being an uncovered claim did not impact how they litigated or defended the claims. Tr. 107:7-20, 275:1-7, 541:5-8. Nor was there

---

[11] The Court finds Cronin's testimony on this subject to be credible even though she could not recall the exact date she informed Graham. While Lula testified that she was not aware of the spoliation claim until late January 2022, Cronin testified that Graham was her main point of contact, and Cronin and Lula testified to the possibility that Graham had conversations with Cronin outside of Lula's purview. Tr. 389:3-11. The Court does not find Lula's testimony, that she thinks Graham would have told her about all his communications credible, as she testified that Cronin worked with Graham because he was the most knowledgeable and that he was primarily responsible for providing information to Cronin and that they may have had communications she was not privy to. Therefore, the Court relies on Cronin's unrebutted testimony about her communication with Graham.

an attempt by NorGUARD to settle only the covered claims and leave MBRE with the spoliation claim.[12] Tr. 150:9-11, 286:11-15.

Unlike the insurer in *Willis*, NorGUARD provided and did not undermine MBRE's defense in *Kraslen I*. NorGUARD did not prevent counsel from their preferred course of action, approved all expenses requested by counsel, and did not disrupt the litigation strategy on eve of trial to MBRE's detriment. Instead, NorGUARD provided an adequate defense and ultimately *Kraslen I* was voluntarily dismissed by the plaintiff. Similarly, NorGUARD's conduct was nothing like the conduct in *Home*. NorGUARD did not usurp MBRE's litigation plan at the eleventh hour and then abandon it with a terrible result, like the insurer did in *Home*. 95 F. Supp. 2d at 907. MBRE was not blindly led or stuck on the sidelines with no control, rather MBRE was aware of and involved in the litigation throughout. Graham, as the MBRE employee who accessed the video, assisted in the preparation of and signed the requests to admit related to the spoliation claims. Tr. 75:15-22. And Cronin told Graham about the Eleventh Amended Complaint, sent him the summary judgment motion before it was filed, and informed him of the mediation.[13] Unlike the insurer in *Home*, nothing NorGUARD did in undertaking MBRE's defense subverted MBRE's ability to protect its own interest. 95 F. Supp. 2d at 906.

The egregious conduct by the insurers in *Willis* and *Home*, stands in stark contrast to the conduct by insurers where the courts did not find equitable estoppel was established. In *Rosalind*

---

[12] Both appointed counsels credibly testified that their goal was to win for MBRE on all claims and that they were not responsible for or concerned with the coverage issues. This is unlike *Royal Ins. Co. v. Process Design Associates* where the insurer undertook the insured's defense for three years while attempting to find a way to have the insured found professionally negligent and therefore not covered, while not informing the insured that it was reserving coverage for professional negligence. 582 N.E.2d 1234, 1241 (Ill. App. Ct. 1991).

[13] The Court finds Cronin's testimony on her involvement and work with Graham to be credible and as Graham did not testify, her testimony on their discussions is unrebutted.

*Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, appointed counsel frequently worked with the insured, the insured was involved in the defense strategy, and there was no situation in which appointed counsel was asked to take an approach that the insured disagreed with. 2014 IL App (1st) 113755, ¶ 62. Likewise in *Mid-State Sav. & Loan Ass'n v. Illinois Ins. Exch., Inc.*, the court found there was no prejudice to the insured when they did not complain about the representation in the underlying action, offered no evidence of loss or damages because of the delay in the insurer reserving its rights, made no showing of what their private counsel would have done differently, and there was no indication that plaintiff's lost their ability to assert a defense or maintain a position in the underlying lawsuit or that they tried to reassert control after learning of the reservation of rights. 529 N.E.2d 696, 700 (Ill. App. Ct. 1988).

Here, Cronin conferred with Graham, who was the most knowledgeable about both the underlying facts of Kraslen's injury and the loss of the video. Cronin worked with Graham on the request responses, and conferred with him about the Eleventh Amended Complaint, the motion for summary judgment, and the mediation. Like in *Rosalind*, MBRE failed to establish that NorGUARD's representation was deficient or that it would have conducted the defense differently in their absence. 2014 IL App (1st) 113755, ¶ 64. MBRE likewise failed to establish that it complained about the representation, offered no evidence of defenses it was unable to raise in *Kraslen I* or *Kraslen II* as a result of NorGUARD's conduct, and there is no evidence that once MBRE was aware of NorGUARD's reservation of rights on the spoliation claim that it sought to act differently, similar to what the court found to be insufficient in *Mid-State*. 529 N.E.2d at 700. The fact that NorGUARD delayed in "raising the issue of noncoverage alone is not sufficient to establish prejudice by clear, concise, and unequivocal evidence." *Id.*

An indicator Illinois courts consider when determining if there was prejudiced to the insured is whether the insured complained about or sought to change litigation or defense strategies after being placed on notice that the insurer is reserving rights. In *Illinois Ins. Guar. Fund v. Nwidor*, the insured did not complain that the representation was defective or show that it was injured by it and the court found that the mere assertion that it was prejudiced by surrendering its defense was insufficient. 2018 IL App (1st) 171378, ¶ 27; *see also Am. States Ins. Co. v. Nat'l Cycle, Inc.*, 260 Ill. App. 3d 299, 310 (1994) ("National Cycle does not complain that plaintiff's representation was defective in any way."). As in *Nwidor*, MBRE did not complain that appointed counsel's representation was defective, nor has it offered any evidence that it was prejudiced by NorGUARD's delay in reserving its rights beyond the bare assertion that it would have liked to have known earlier. Tr. 65:17-25, 408:15-410:9. MBRE also did not seek a different litigation strategy or try to separately settle with Kraslen for the spoliation claim after it was aware of NorGUARD's reservation of rights and other defendants separate settlements with Kraslen after the global mediation collapsed. Tr. 438:22-439:9. Nor did MBRE seek to settle the spoliation claim with Kraslen after the summary judgment motion was denied. Tr. 439:11-17. Finally, during the pretrial conference, over six months after NorGUARD disclaimed coverage for the spoliation claim, when there were again settlement discussions, MBRE had no concerns, objections to, or expressed any interest in changing appointed counsel's legal strategies. Tr. 409:11-25, 515:3-15.

MBRE argues that under *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, all it must show for prejudice is a loss of control for a period of the litigation to estop NorGUARD from raising a defense. 927 F.3d 1007, 1013 (7th Cir. 2019). Specifically, because there was a period when NorGUARD was litigating the case on behalf of MBRE without a reservation of rights, NorGUARD was in control and therefore can be estopped from ever raising a defense of

noncoverage, even in a second litigation that NorGUARD had no involvement. This is a strained reading of that case. In *Blue Moon*, the Seventh Circuit found that the insured never lost control of its defense because its counsel controlled the litigation strategy from the start. *Id.* Although MBRE lacked its own counsel, MBRE was actively aware of and participating in its defense and at no point before or after the reservation of rights, did it object to or express any concerns as to appointed counsel's litigation strategy. MBRE's argument that simply because defense counsel was appointed and paid for by NorGUARD means that NorGUARD was solely in control, is contrary to the evidence here which showed MBRE's active involvement and approval of appointed counsel's conduct.[14] While MBRE asserts that *Blue Moon* stands for the proposition that an insurer's later conduct cannot be used to defeat a claim for estoppel, that assertion is unsupported by the case and not applicable here as MBRE never lost control.[15] [172] at 10. *Blue Moon* instructs district courts to analyze whether the insured lost control of the litigation, which MBRE did not. Further, it is firmly established that merely assuming the defense is not sufficient to establish prejudice and MBRE failed to identify any induced loss of control because of NorGUARD's conduct in *Kraslen I.*

MBRE further contends that the mediation is evidence of prejudice, but that occurred after MBRE was already aware of the spoliation claims so it knew these claims were being raised against

---

[14] To make this argument, MBRE relies solely on Lula's testimony that she was not aware of the actions by appointed counsel while disregarding Cronin's testimony that she was working with Graham. The Court found Cronin's testimony about her work with Graham to be credible and unrebutted as Graham was not called to testify. Thus, the Court finds that MBRE was aware of, involved in, and approved of defense counsel's actions throughout the period at issue in this case.

[15] In *Blue Moon*, the Seventh Circuit found that the insurer's decision to replace the insured's counsel and reserve its rights after learning of the insured's conduct, which rendered the underlying litigation outside the scope of the policy, could defeat the application of equitable estoppel because it was after the reservation of rights. 927 F.3d at 1014. Thus, an insurer is able to change its reservation and take a different course of action upon learning of information that places the insured's conduct outside of the policy.

it by Kraslen and the direct defendants because of its employee's conduct. Tr. 185:4-5; 379:4-8; 415:1-11; 437:17-18.[16] It also occurred after NorGUARD provided MBRE with its reservation of rights disclaiming coverage for the spoliation claims, which indicates that MBRE was on notice that NorGUARD's policy did not cover the spoliation claims but that NorGUARD would continue to provide a defense for both the covered and uncovered claims. As discussed above, merely asserting a reservation of rights or filing a declaratory judgment does not insulate an insurer from equitable estoppel if their subsequent conduct prejudiced the insured. *Home*, 95 F. Supp. 2d at 906–07. However, nothing occurred at the mediation which prejudiced MBRE. While, MBRE argues that appointed counsel was only there to protect NorGUARD's lien, the evidence shows that counsel was there to protect MBRE's interest by not waiving the lien and not offering additional funds. Further, Kraslen left the mediation before MBRE, through its appointed counsel, could make an offer or reject a demand. The mediation was an attempt for a global settlement between all the parties involved in *Kraslen I*, of which MBRE was only one small part, whose role was largely secondary to the negotiations between Kraslen and the direct defendants. As Kraslen rejected the direct defendants' offer, without input from MBRE or NorGUARD, there was nothing MBRE could have done differently. Also, as there were multiple opportunities for MBRE to settle the case after this mediation and NorGUARD's reservation of rights, MBRE's current argument, that counsel's failure to settle at this mediation is evidence that it lost control of the litigation because it would have made an offer, is unsupported and unpersuasive.

MBRE also spent much of the trial asking witnesses about matters that it did not raise in its post-trial brief and has thus waived. For example, MBRE questioned Cronin, O'Neill, and

---

[16] The Court finds Kraslen's testimony about the mediation not credible as he repeatedly testified that he did not recall or could not remember what happened, when it happened, or why things were done, but would later agree with his attorney's versions of events when asked leading questions on cross examination. Tr. 30:18-32:7, 33:2-4, 43:1-47:9, 48:15-22.

Hogan at length about an order which implied that their expert disclosures were late, all of whom rejected the idea that the expert disclosures were late. Tr. 132:19-23, 158:19-160:13, 181:21-182:7, 186:10-15, 300:17-301:19, 518:1-11, 520:22-521:6, 522:12-524:12, 544:6-8. After trial, NorGUARD moved to supplement the record with evidence that the expert disclosure deadline in *Kraslen I* was amended. [157]. Specifically, that there was an August 17, 2021, order striking the original deadline and that order was prepared by Mark Patricoski—counsel for Kraslen in *Kraslen I* and counsel for MBRE in this case. [157-2]. The Court granted NorGUARD's motion and the order was admitted into evidence. [161]. Despite MBRE's focus on the issue of experts at trial, MBRE does not mention experts in their post-trial brief, presumably because the amended order has diminished the impact of this argument. So, any arguments about the use of experts or the timelines of the expert disclosures are waived. MBRE also failed to raise arguments about the adequacy of the reservation of rights letter as it related to potential conflicts of interest or right to independent counsel (which it spent considerable time on at trial), and thus the Court does not consider those. Likewise, MBRE at summary judgment argued that NorGUARD waived the right to raise noncoverage, but it conceded that it could no longer make such an argument in its post-trial brief. [172] at 10 n.2. The only argument MBRE makes in its post-trial brief is that it was prejudiced by NorGUARD's conduct for the purposes of equitable estoppel, thus this is the only argument analyzed by the Court.

Detrimental to MBRE's case was that it only presented two witnesses to support its equitable estoppel argument: Martin Kraslen and Kathrine Lula. Kraslen testified about his fall, his spoliation claim, and what occurred in *Kraslen I*, from his viewpoint, as the plaintiff in that action. However, Kraslen could not recall or did not know why certain things happened in that case, including what happened in the mediation and why *Kraslen I* was voluntarily dismissed.

Further, Kraslen's testimony is of little relevance to the equitable estoppel issue in this dispute between NorGUARD and MBRE. MBRE also attempts to rely on the testimony of Lula to establish MBRE's lack of awareness or approval of defense counsel's actions in *Kraslen I*. However, Lula only testified to her knowledge of *Kraslen I*, while stating that she put Cronin in touch with Graham and that he was the person Cronin regularly conferred with about this case. Graham did not testify. Thus, Lula's lack of knowledge does not move the needle as to MBRE's knowledge and is given minimal weight. Therefore, the testimony of these witnesses failed to establish that MBRE was prejudiced.

Based on all of the testimony and evidence in the record, neither MBRE nor NorGUARD considered the spoliation claim brought by Kraslen in *Kraslen I* to be a serious litigation risk until, at the earliest, January 2022. The fact that three years later MBRE entered into a consent judgment with Kraslen in *Kraslen II* and nearly four years later this matter is being litigated in federal court does not retrospectively change that. MBRE had all the information and chose to go with this course of action. Hindsight is twenty-twenty. Simply because MBRE now wishes that it would have acted differently does not establish prejudice. Equitable estoppel is not a vehicle by which MBRE can now second guess those decisions by placing all the blame on NorGUARD. The question for equitable estoppel is not whether, with the information it has now, MBRE would have acted differently in the hopes of getting a better outcome, the question is whether it was prejudiced by NorGUARD purportedly inducing it to surrender control. Even if the Court could impute the conduct from *Kraslen I*—which Kraslen voluntarily dismissed and NorGUARD paid all attorney's fees and costs—to *Kraslen II*—where NorGUARD properly disclaimed its duty to defend and filed a declaratory judgment—there is no prejudice to MBRE to impute. Having presided over the trial and assessed the credibility of the witnesses, the Court finds that MBRE does not come anywhere

close to meeting its burden by clear, concise, and unequivocal evidence. The Court finds that MBRE was not prejudiced.[17]

### III. MBRE's Motion for Sanctions

Lastly, the Court addresses MBRE's motion for sanctions for improper conduct during discovery. MBRE argues that NorGUARD produced its claim notes with improper redactions and then allowed O'Neill to falsely testify about his knowledge of Kraslen's spoliation claim at his deposition, which NorGUARD then relied on to build its timeline for summary judgment.[18] [136]. The claim notes are a collection of NorGUARD's employees' internal notes about events relevant to MBRE's claim against the insurance policy that are listed in reverse chronological order on a single document. The claim notes start on April 25, 2019, and continue through May 31, 2023. O'Neill wrote the notes containing the redactions MBRE argues were improper.

Although NorGUARD redacted portions of several of the notes, MBRE contends that three of these redactions conceal evidence that contradicted NorGUARD's arguments and timeline during summary judgment. As part of its motion for summary judgment, NorGUARD argued that it did not have any actual knowledge of Kraslen's spoliation claim until January 31, 2022. *See* [75] at 6. Lacking any evidence to the contrary, this is the date MBRE and the Court relied on during the summary judgment proceeding. However, three of O'Neill's claim notes, which were redacted in the version MBRE originally received, indicated that O'Neill knew about Kraslen's claims prior

---

[17] Further, MBRE has made no attempt to establish the first two elements of equitable estoppel—that NorGUARD misled them or that they reasonably relied on a misleading statement or action by NorGUARD. These two prongs are not addressed in MBRE's brief. This also warrants judgment against MBRE and in favor of NorGUARD.

[18] MBRE later supplemented this motion with additional emails showing that Cronin had discussed with O'Neill filing counterclaims to the spoliation claims in December 2021 and additional spoliation claims being filed in September 2021. *See* [143]. For the reasons discussed below, the Court credits Cronin's trial testimony regarding informing NorGUARD about the spoliation claim shortly after it was filed, so the emails are immaterial. *See* PEX11, PEX24.

to that.  On January 11 and 12, 2022, O'Neill wrote about summary judgment motions being filed by both defense counsel and Kraslen's counsel regarding the spoliation claims, and even further back, on October 5, 2021, he wrote about a discussion with Cronin and the worker's compensation counsel about a subpoena, the spoliation claims, NorGUARD not possessing the video, and Cronin's view that the spoliation claim was a red herring. [136] at 5–6.

While the parties dispute whether the redacted claim notes were produced on October 24, 2023, or December 13, 2023, MBRE did not object to the redactions at the time.  MBRE requested the unredacted notes on March 19, 2025.  NorGUARD produced the notes on April 24, 2025.  On May 7, 2025, after MBRE sent a Rule 11 sanctions motion, NorGUARD filed an amended joint Rule 56 statement, amended response in opposition, and amended Rule 56 statement, along with a letter explaining that it was filing corrected documents. *See* [130], [131], [132], [133].  The unredacted claim notes were then admitted at trial by both MBRE and NorGUARD and discussed extensively by witnesses.[19]

MBRE seeks sanctions under Rule 37(c) and requests relief including the dismissal of NorGUARD's claims with prejudice, a rendering of a default judgment against NorGUARD, or in the alternative, payment of reasonable attorney's fees and costs incurred by MBRE or a finding of NorGUARD's knowledge of the spoliation claim by a certain date. [136].  NorGUARD responds that it did not produce the unredacted claim notes originally because it did not know the basis of MBRE's waiver or estoppel claims and that the redactions for attorney-client privilege were proper at the time of the production.  The Court heard the testimony of the relevant witnesses and reviewed the parties' filings and the evidence, and grants in part and denies in part MBRE's motion. [136].

---

[19] The claim notes were admitted into evidence by NorGUARD as PEX44 and MBRE as DEX97. *See* [169] at 257–62; [170] at 50–55.

Under Rule 37, a court may impose sanctions upon a party who violates an order directing discovery. MBRE is seeking sanctions under Rule 37(c), which traditionally allows for the exclusion of witnesses or evidence at trial by a party who fails to disclose them, which is mandatory "unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Johnson v. C. R. Bard, Inc.*, 77 F.4th 641, 646 (7th Cir. 2023) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). District courts have broad discretion in determining if a violation is either justified or harmless. *Id.* However, here MBRE is not seeking to exclude the claim notes and is instead seeking alternative relief allowed by Rule 37(c)(1).

The following factors guide district courts when making Rule 37 determinations: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019) (quoting *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012)). But, the Seventh Circuit has warned that Rule 37's use is limited as it is intended to provide "recourse for parties actually harmed by a litigant's noncompliance with disclosure obligations." *Id.* at 419. Rule 37 "does not safeguard a party's decision to sense an error, seize on it, and then, when it is resolved, claim incurable harm in the face of apparent remedies." *Id.*

NorGUARD's main argument is that the notes were properly redacted for attorney client privilege when they were produced. This argument fails on closer inspection. While Illinois extends the attorney client privilege to insured-insurer communication, the purpose of that privilege is to protect communications made by an insured to an insurer for purpose of transmitting it to an attorney to protect the interests of the insured. *See People v. Ryan*, 30 Ill. 2d 456, 461 (1964); *see also Chicago Trust Co. v. Cook County Hosp.*, 298 Ill. App. 3d 396, 407 (1st Dist.

1998).  Such privilege is to be narrowly construed and "only applies when the 'communication is made to the insurer for the dominant purpose of transmitting it to an attorney for the protection of the interest of the insured.'" *Valenti ex rel. Est. of Kolberg v. Rigolin*, 2002 WL 31415770, at *3 (N.D. Ill. Oct. 25, 2002) (quoting *Chicago Trust Co.*, 298 Ill. App. 3d at 409).  Here, NorGUARD claims that privilege prevented disclosure to MBRE of its communications with appointed counsel on MBRE's behalf.  There is no basis for that withholding in Illinois law.  On the contrary, the Illinois Supreme Court has held that under the common interest doctrine, in a declaratory action against the insured, the privilege does not apply to communications with appointed counsel by the insurer or insured as allowing the privilege would disregard the public policy of encouraging full disclosure. *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 328–29 (Ill. 1991).  Thus, the redactions were improper at the time, and NorGUARD has recognized that by producing the unredacted versions later without a court order.

Turning to the most extreme sanctions request, MBRE seeks the dismissal of NorGUARD's claims and a default judgment to be entered against NorGUARD because of this violation.  The Seventh Circuit has repeatedly cautioned that in the normal course, "justice is dispensed by the hearing of cases on their merits." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 759–60 (7th Cir. 2004) (*Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 740 (7th Cir. 1998)).  Dismissal and default sanctions are "draconian" and are only appropriate when the "offending party has demonstrated wilfulness, bad faith, or fault." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *see Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 599 (7th Cir. 2022).  Such a harsh sanction is not appropriate here.  Once MBRE had the unredacted claim notes, it did not ask for an extension of time to review them or move to reopen discovery.  Further, MBRE had access to and used the unredacted claim notes at the bench trial.

26

MBRE asked the claims adjuster about the notes and the unredacted notes were admitted into evidence. Moreover, the Court credited Cronin's testimony establishing that NorGUARD knew of the spoliation claim before the date on the claim notes. However, for the reasons discussed above, MBRE, even using the claim notes, did not establish its affirmative defense of equitable estoppel. Thus, while inconvenient for MBRE to not have these notes sooner, they would not have changed the outcome of the summary judgment opinion, as they did not change the outcome at trial.

But the Court's choices for Rule 37 sanctions are not limited to the most extreme options. District courts are instructed to consider whether a lesser sanction would prove effective. *Musser*, 356 F.3d at 759–60. MBRE also requested attorney's fees and costs for a variety of actions taken since the redacted notes were produced. NorGUARD argues that since it did not display willfulness, bad faith, or fault, Rule 37 sanctions are not appropriate. [139] at 10. But a showing of "willfulness, bad faith, or fault is necessary only when dismissal or default is imposed as a discovery sanction." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011).

While having the notes for summary judgment would not have changed the ultimate outcome, the loss was not harmless. The importance of the unredacted claim notes to the facts at issue in this case is highlighted by their repeated use at trial and NorGUARD's decision to file an amended joint Rule 56.1 statement, amended response in opposition, and amended Rule 56.1 statement, along with a letter explaining that it was filing corrected documents. The Court does not condone that NorGUARD's summary judgment briefing, which contained factually incorrect information regarding an important fact and which—while even if corrected would not have changed—represents a lack of candor to the Court. The Court, as a result, used an incorrect timeline in its opinion. Having heard the witnesses at trial, the Court credits Cronin's testimony

that she told NorGUARD about the spoliation claim shortly after the Eleventh Amended Complaint was filed in September 2021. Tr. 82:14-23, 123:4-20. Cronin was also shown the October 5, 2021, claim note and testified that she understood it to indicate that she discussed the spoliation claim with O'Neill at that meeting. Tr. 179:10-180:14. Either way, both dates are long before the January 31, 2022, date NorGUARD used during summary judgment. Further, the fact that it took NorGUARD over a month to produce the unredacted notes, despite multiple requests from MBRE is troubling. But there was no delay in the trial proceedings because of the late production as MBRE did not seek a continuance or additional discovery after receiving the unredacted notes. *See David*, 324 F.3d at 857–58 (finding no abuse of discretion when the district court did not exclude an expert under Rule 37 when the complaining party did not seek a continuance to rebut the testimony and introduced other evidence to rebut it and was not prejudiced). After weighing this combination of factors, the Court finds there was sufficient harm to MBRE because of NorGUARD's conduct that warrants some sanction that is proportional to the violation.

Under Rule 37(c)(1)(A) a court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]" Fed. R. Civ. P. 37(c)(1)(A). The Court finds that because of NorGUARD's failure, MBRE is entitled to reasonable attorney's fees and costs incurred only in obtaining the unredacted claim notes from March 19, 2025, through April 24, 2025, and the reasonable attorney's fees and costs associated with preparing its Rule 37 sanctions motion [136] and Rule 11 sanctions motion sent to NorGUARD on April 29, 2025. The Court denies MBRE's motion for fees as it relates to all costs since October 24, 2023, trial preparation costs, and the costs associated with reopening discovery (which did not occur) and to the finding of any facts related to NorGUARD's knowledge of the spoliation claim, and any other requested relief.

**Conclusion**

Based on the foregoing findings of fact and conclusions of law, the Court concludes that MBRE failed to establish that NorGUARD should be equitably estopped from raising its defense of noncoverage and that NorGUARD owed no duty to defend MBRE in *Kraslen II*. Thus, the Court enters judgment in favor of NorGUARD. As to MBRE's motion for sanctions [136] the Court grants in part as to MBRE's reasonable attorney's fees and costs associated with obtaining the unredacted claim notes from March 19, 2025, through April 24, 2025, and with preparing its Rule 37 and Rule 11 sanctions motions. MBRE's motion for sanctions [136] is otherwise denied. MBRE shall submit its reasonable attorneys' fees and costs to NorGUARD. Both parties are then required to meet and confer and should endeavor to agree on the amount of payment.

**SO ORDERED.**

Dated: November 6, 2025

_____
Sunil R. Harjani
United States District Judge